IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

**JEAN ANN KIDD AND**
**JUDSON C. KIDD, her husband,**

    **PLAINTIFFS**

**VS.**                                                                                                                        **CASE NO. 5:15-cv-203**

**BAUSCH & LOMB INCORPORATED,**

    **DEFENDANTS**
_____/

## COMPLAINT

Come now the Plaintiffs, Jean Ann Kidd and Judson C. Kidd, her husband, by and through the undersigned counsel, and for their Complaint, state and allege as follows:

### PARTIES AND JURISDICTION

1.  Plaintiffs, Jean Ann Kidd and Judson C. Kidd, her husband, at all times herein relevant, were natural persons over the age of eighteen (18) years residing in and citizens of the County of Pulaski, State of Arkansas.

2.  Plaintiffs are informed and believe and thereon allege that Defendant, Bausch & Lomb Incorporated ("Bausch & Lomb") at all times herein relevant, was a foreign for profit corporation doing business in the States of Florida, Arkansas, and throughout the United States. Bausch & Lomb's registered agent for service is CT Corporation Company, 1200 S. Pine Island Road, Plantation, Florida  33324.

3. Bausch & Lomb represents itself as "a leading global eye health organization…solely focused on protecting, enhancing, and restoring people's eyesight". Bausch & Lomb states its "core businesses include…contact lenses, lens care products…".

4. On or about August 10, 2011 in Panama City, Florida, Plaintiff, Jean Ann Kidd, did purchase and use a bottle of Bausch & Lomb cleaner to clean her contact lenses, and suffered damages as a direct result of such use.

5. Defendants placed the defective product into the stream of interstate commerce, including in the State of Florida.

6. As a direct and proximate result of Defendant's placing the defective product into the stream of commerce, including the State of Florida, Plaintiff, Jean Ann Kidd suffered and continues to suffer injuries including, but not limited to, physical, mental and economic loss, obligations for medical services and expenses, pain and suffering, and Plaintiff Judson C. Kidd has suffered and continues to suffer the loss of his wife's consortium, companionship, society, affection, services and support.

7. This court has jurisdiction over Defendants in this case pursuant to, *inter alia,* F.S. §48.193(f)2.

8. Venue is proper as Plaintiff, Jean Ann Kidd, purchased, used, was injured, and treated in Florida.

9. Upon information and belief, at all relevant times, Defendant was present, transacted, solicited and conducted substantial business in the State of Florida, including particularly in this District, and derived substantial revenues from such business.

10. Upon information and belief, Defendant made material omissions and misrepresentations and breaches of warranties in the State of Florida, including particularly in this District, so as to subject them to *in personam* jurisdiction of this Court.

11. At all relevant times, Defendant expected or should have expected that their acts and omissions would have consequences within the United States and the State of Florida.

12. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000.00, exclusive of interest and costs, and because complete diversity exists between the parties, as set forth below, Plaintiffs are citizens of a state that is different from the state where the Defendant is incorporated and has its principal place of business.

## FACTUAL ALLEGATIONS

13. Defendant, Bausch & Lomb designed, developed, manufactured, tested, packaged, advertised, promoted, marketed, distributed, labeled, and/or sold the contact lens eye care product used by Plaintiff.

14. On or about August 10, 2011, as a direct and proximate result of her purchase and use of the defective Bausch & Lomb Boston Advance Cleaner, Plaintiff, Jean Ann Kidd, suffered damages, including severe burns to the cornea and surrounding tissues of the eye.

## FIRST CAUSE OF ACTION
## STRICT PRODUCT LIABILITY -- DEFECTIVE DESIGN

15. Plaintiffs hereby incorporate by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further allege as follows

16. Defendant is the manufacturer, designer, distributor, seller and/or supplier of the optical cleaning solution.

17. The optical cleaning solution manufactured, designed, sold, distributed, supplied and/or placed in the stream of commerce by the Defendant, was defective and unreasonably dangerous in their manufacture and construction when it left the hands of the Defendant posing a serious risk of injury and death. The product was expected to, and did, reach the end user or consumer, without substantial change in the condition in which it was sold.

18. The defective product was defective in design in that it was more dangerous than an ordinary consumer would expect when used in its intended or reasonably foreseeable manner.

19. When manufactured, packaged, assembled, labeled, distributed, supplied and placed in the stream of commerce, the defective product contained unreasonably dangerous design defects and were not reasonably safe as intended to be used, subjecting Plaintiff to risks which exceeded the benefits.

20. When manufactured, packaged, assembled, labeled, distributed, supplied and placed in the stream of commerce, the defective product was defective in design and formulation, making use of the defective product more dangerous than an ordinary consumer would expect.

21. The aforementioned defects existed when Defendant placed the defective product into the stream of commerce.

22. But for the aforementioned defective and unreasonably dangerous conditions, Plaintiff would not have used the defective product and would not have sustained the injuries alleged herein.

23. As a direct and proximate result of the use of Defendant's optical cleaning solution as manufactured, designed, sold, supplied and introduced into the stream of commerce by the Defendant and/or the failure to comply with known industry precautions, the Plaintiff has

suffered serious physical injury, harm, damages and economic loss and will continue to suffer such harm, damages and economic loss in the future.

24. Plaintiff contends that the conduct of the Defendant is attended by circumstances of oppression, malice, willfulness, wantonness, or with reckless or conscious disregard for human life and safety, so as to warrant the imposition of punitive damages.

25. The optical cleaning solution, manufactured and supplied by the Defendant is defective and unreasonably dangerous in design or formulation in that, when it left the hands of the Defendant, the foreseeable risks of the product exceeded the benefits associated with its design or formulation, or it was more dangerous than an ordinary consumer would expect, and/or it failed to comply with known industry precautions. This product was expected to, and did, reach the Plaintiff without substantial change in the condition in which it was sold.

26. The foreseeable risks associated with the design or formulation of the optical cleaning solution, include, but are not limited to, the fact that the design or formulation of the optical cleaning solution is more dangerous than a reasonably prudent consumer would expect when used in an intended or reasonably foreseeable manner, and it failed to comply with industry standards.

27. Furthermore, Bausch & Lomb's Boston ADVANCE cleaner is defectively designed, when considering the product is unnecessarily caustic and dangerous for its purpose of cleaning contact lenses, which, necessarily, are put into repeated, extended contact with delicate ocular tissue.

28. Bausch & Lomb can and should produce a cleaning solution that is just as effective at cleaning consumers' contact lenses, yet doing so without being as caustic and dangerous for consumers' eyes.

29. As a direct and proximate result of Plaintiff's use of the optical cleaning solution, as manufactured, designed, sold, supplied, marketed and introduced into the stream of commerce by the Defendant and/or their failure to comply with industry precautions, Plaintiff has suffered serious physical injury, harm, damages and economic loss and will continue to suffer such harm, damages and economic loss in the future.

30. As a direct and proximate result of Plaintiff's use of the optical cleaning solution, as manufactured, designed, sold, supplied, marketed and introduced into the stream of commerce by the Defendant and/or their failure to comply with industry precautions, Plaintiff has suffered serious physical injury, harm, damages and economic loss and will continue to suffer such harm, damages and economic loss in the future.

WHEREFORE, Plaintiffs demand judgment against each Defendant, individually, jointly and collectively for compensatory damages in a sum in excess of $75,000 and punitive damages, together with interest, costs of suit, attorneys' fees and all such other and further relief as the Court deems proper.

## THIRD CAUSE OF ACTION
## STRICT PRODUCT LIABILITY -- FAILURE TO WARN

31. Plaintiffs incorporate by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further allege as follows.

32. Defendant is the manufacturer, designer, distributor, seller, and/or supplier of optical cleaning solution.

33. The defective product manufactured and supplied by the Defendant was defective in that, when it left the hands of the Defendant, they did not conform to representations made by the Defendant concerning the product and/or with applicable industry precautions and the

Defendant failed to warn of the defects, problems, risks or hazards with its product. Defendant had a duty to warn of the risks and dangers of its product because it knew this product was being placed in the human body and could cause substantial physical harm and suffering when used in their normal and customary manner. Defendant breached its duty, because their warning was inadequate and the breach proximately caused harm to the Plaintiff.

34. Defendant distributed and sold the optical cleaning solution in the condition in which it left their place of manufacture, in its original form of manufacture, which included the defects described herein. The optical cleaning solution was expected to and did reach Plaintiff without substantial change or adjustment in its condition as manufactured and sold by Defendant.

35. The optical cleaning solution designed, developed, tested, manufactured, marketed and sold or otherwise placed into the stream of commerce by the Defendant was in a dangerous and defective condition and posed a threat to any user of consumer of the optical cleaning solution. Plaintiff was and is in a class of persons that Defendant should have considered to be subject to the harm caused by the defective nature of the optical cleaning solution.

36. This use has resulted in severe physical and emotional and other injuries to Plaintiff.

37. Defendant knew or should have known through testing, adverse event reporting, or otherwise, that the optical cleaning solution created a high risk of bodily injury and serious harm.

38. Defendant failed to provide adequate and timely warnings or instructions regarding the optical cleaning solution and its known defects.

39. Plaintiff relied upon Defendant's warnings or lack thereof regarding the optical cleaning solution, when she selected these products to be used.

40. Bausch & Lomb markets and packages its Boston ADVANCE cleaner in a way that withholds from consumers that the product is caustic and can cause irreversible, profoundly painful damage to users' eyes.

41. Bausch & Lomb also markets and packages its Boston ADVANCE cleaner identically to other Boston contact lens solutions that are intended by the manufacturer to be routinely applied to the contact lens and ocular surface, which invites consumers confusion between those products with Boston's ADVANCE cleaner, which can cause irreversible, profoundly painful damage to users' eyes.

42. Upon information and belief, Bausch & Lomb has been put on notice repeatedly that consumers confuse the ADVANCE cleaner with products intended by the manufacturer to be routinely applied to the contact lens and ocular surface through multiple consumer complaints and adverse event reports filed with the Federal Food and Drug Administration.  Further, upon information and belief, adverse events pertaining to injuries caused by Bausch & Lomb's Boston ADVANCE cleaner have been reported.

43. Despite this knowledge, Bausch & Lomb continue to market and package its Boston ADVANCE cleaner in a way that perpetuates this confusion, unnecessarily causing irreversible damage to consumers' eyes.

44. The Plaintiff used the defective product for its intended purpose.

45. The Plaintiff used the defective product for its intended purpose.

46. The Plaintiff did not have substantially the same knowledge as an adequate warning from the manufacturer or distributor should have communicated.

47. The warnings given by Defendant were not adequate, accurate, clear and were ambiguous.

48. Defendants knowingly and intentionally failed to display warnings in a manner in which the consuming public would see.

49. The Defendant had a continuing duty to warn the Plaintiff of the dangers associated with the defective product.

50. The aforementioned defects existed when Defendant placed the defective product into the stream of commerce.

51. As a direct and proximate result of Plaintiff's use of the optical cleaning solution, and Defendant's breach of its duty to warn of the dangers and risks regarding the character and quality of the optical cleaning solution and/or the failure to comply with industry standards, Plaintiff has suffered serious physical injury, harm, damages and economic loss and will continue to suffer such harm, damages and economic loss in the future.

WHEREFORE, Plaintiffs demand judgment against each Defendant, individually, jointly and collectively for compensatory damages in a sum in excess of $75,000 and punitive damages, together with interest, costs of suit, attorneys' fees and all such other and further relief as the Court deems proper.

## FOURTH CAUSE OF ACTION
## NEGLIGENCE

52. Plaintiffs incorporate by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further allege as follows.

53. Defendant had a duty to exercise reasonable care in the design, manufacture, sale and/or distribution of the optical cleaning solution into the stream of commerce, including a duty

to assure that its product did not pose a significantly increased risk of bodily harm and a duty to comply with industry standards.

54. Defendant has an obligation to comply with industry standards in the manufacture, design, testing, assembly, inspection, labeling, packaging, supplying, marketing, selling, advertising, preparing for use, warning of the risks and dangers of the optical cleaning solution, and otherwise distributing the optical cleaning solution.

55. Defendant failed to exercise ordinary care and/or were wanton in the design, formulation, manufacture, sale, testing, quality assurance, quality control, labeling, marketing, promotions and distribution of the optical cleaning solution into interstate commerce in that Defendant knew or should have known that these products caused significant bodily harm and were not safe for use by consumers, and/or through failure to comply with industry standards.

56. Despite the fact that Defendant knew or should have known that the optical cleaning solution posed a serious risk of bodily harm to consumers, Defendant continued to manufacture and market the optical cleaning solution for use by consumers and/or continued to fail to comply with industry standards.

57. Defendant knew or should have known that consumers such as Plaintiff would foreseeably suffer injury as a result of Defendant's failure to exercise ordinary care and/or wanton conduct with industry standards.

58. Plaintiffs incorporate by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further allege as follows.

59. As a direct and proximate result of Defendant's negligence, Plaintiff suffered serious physical injury, harm, damages and economic loss and will continue to suffer such harm, damages and economic loss in the future.

60. At all times material hereto, the Defendant had a duty to exercise reasonable care to consumers, including Plaintiff, in the design, development, manufacture, testing, inspection, packaging, marketing, promotion, distribution, labeling, and/or sale of the defective product.

61. The Defendant breached its duty of reasonable care to the Plaintiff in that it negligently designed, developed, manufactured, tested, inspected, packaged, promoted, marketed, distributed, labeled, and/or sol the defective product.

62. The Defendant knew or should have known that consumers, including Plaintiff, would foreseeably suffer injury as a result of Defendant's failure to exercise reasonable and ordinary care.

63. Plaintiff contends that the conduct of the Defendant, as described above, including but not limited to its failure to adequately design and manufacture, as well as its continued marketing and distribution of the optical cleaning solution when they knew or should have known of the serious health risks these devices created and/or the failure to comply with industry standards, is attended by circumstances of oppression, malice, willfulness, wantonness, and constitutes a conscious, reckless and flagrant disregard for human life, so as to warrant the imposition of punitive damages.

64. As a direct and proximate result of Plaintiff's use of the optical cleaning solution, as manufactured, designed, sold, supplied, marketed and introduced into the stream of commerce by the Defendant and/or their failure to comply with industry precautions, Plaintiff has suffered serious physical injury, harm, damages and economic loss and will continue to suffer such harm, damages and economic loss in the futureWHEREFORE, Plaintiffs demand judgment against each Defendant, individually, jointly and collectively for compensatory damages in a sum in

excess of $75,000 and punitive damages, together with interest, costs of suit, attorneys' fees and all such other and further relief as the Court deems proper.

## FIFTH CAUSE OF ACTION
## BREACH OF EXPRESS AND IMPLIED WARRANTIES

65. Plaintiffs incorporate by reference, as is fully set forth herein, each and every allegation set forth in the preceding paragraphs and further allege as follows.

66. At the time Defendant marketed, sold and/or dispensed the Boston Advance Cleaner, Defendant knew that the product was intended for human use.

67. At the time Defendant marketed, sold and/or dispensed the Boston Advance Cleaner, Plaintiff was a foreseeable user of Defendant's Boston Advance Cleaner.

68. At the time Defendant marketed, sold and/or dispensed the Boston Advance Cleaner, Defendant expressly warranted that the optical cleaning solution was safe and effective and merchantable for its intended use.

69. Plaintiff reasonably relied upon the representations that the Boston Advance Cleaner was of merchantable quality and safe for its intended use.

70. Contrary to the express and implied warranties, at the time Defendant marketed, sold and/or dispensed Boston Advance Cleaner, the Boston Advance Cleaner was not of merchantable quality or safe for its intended use as described above.

71. Defendant breached said warranties in that the defective product was not safe and fit for its intended use and, in fact, causes debilitating and potentially lethal side effects.

72.   The optical cleaning solution manufactured and sold by Defendant did not conform to these express representations, because they caused serious injury to Plaintiff when used a recommended and directed.

73.   At the time Defendant designed, manufactured, marketed, sold, and distributed the optical cleaning solution for use by Plaintiff, Defendant knew of the use for which the optical cleaning solution was intended and impliedly warranted this product to be of merchantable quality and safe for its particular use and that its design, manufacture, labeling, and marketing complied with all applicable industry standards.

74.   Plaintiff relied upon the skill and judgment of Defendant as to whether the optical cleaning solution was of merchantable quality and safe for its intended particular use and upon Defendant's implied warranty as to such matters, including that it was in compliance with all industry standards.

75.   Contrary to such implied warranties, the optical cleaning solution was not of merchantable quality or safe for its particular intended use, because the product was defective as described above, and/or filed to comply with industry standards.

76.   As a direct and proximate result of Defendant's breach of warranty, Plaintiff has suffered serious physical injury, harm, damages and economic loss and will continue to suffer such harm, damages and economic loss in the future.

WHEREFORE, Plaintiffs demand judgment against each Defendant, individually, jointly and collectively for compensatory damages in a sum in excess of $75,000 and punitive damages, together with interest, costs of suit, attorneys' fees and all such other and further relief as the Court deems proper.

## SIXTH CAUSE OF ACTION
## LOSS OF CONSORTIUM

107. Plaintiffs incorporate by reference, as is fully set forth herein, each and every allegation set forth in the preceding paragraphs and further allege as follows.

108. As a direct and proximate result of the above-described injuries sustained by Plaintiff Jean A. Kidd, her husband, Judson C. Kidd has suffered a loss of his wife's consortium, companionship, society, affection, services and support.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs demand judgment against Defendant and requests compensatory damages, together with interest, cost of suit, attorneys' fees, and all such other relief as the Court deems just and proper as well as:

i. Compensatory damages to Plaintiff for past, present, and future damages, including, but not limited to, pain and suffering for severe and permanent personal injuries sustained by Plaintiff, health and medical care costs, together with interest and costs as provided by law;

ii. Restitution and disgorgement of profits;

iii. Reasonable attorneys' fees;

iv. The costs of these proceedings;

v. All ascertainable economic damages;

vi. Punitive damages; and

vii. Such other and further relief as this Court deems just and proper.

PLAINTIFFS DEMAND A TRIAL BY JURY.

Dated:  August 10, 2015.

Respectfully submitted,

By: s/ Neil D. Overholtz
Neil D. Overholtz (0188761)
noverholtz@awkolaw.com
**AYLSTOCK, WITKIN, KREIS & OVERHOLTZ, PLLC**
17 East Main Street, Suite 200
Pensacola, FL  32502
Telephone: (850) 202-1010
Facsimile: (850) 916-7449

*Attorneys for Plaintiff*